IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION NO. 2:13-CV-00214-RWS |
| RICHARD RUSSELL, as Administrator of the Estate of LEONARD W. CRAIG, Deceased, DOROTHY CRAIG, PRECISION TAPPING, INC., JOYCE CONNER and ALLMERICA FINANCIAL ALLIANCE INSURANCE COMPANY, | : : : : : : : : : | |
| Defendants. | : | |

## **ORDER**

This case comes before the Court for a determination of a single legal issue.  After considering the record, the Court enters the following Order.

## **Background**

This case arises out of a dispute about insurance coverage in connection with a lawsuit filed in state court which is based on an automobile accident between Joyce Conner and Dorothy Craig.  That accident allegedly resulted in the death of Leonard Craig.  (Def.'s Statement of Undisputed Material Facts

("Def.'s SMF"), Dkt. [40-2] ¶ 3.).  In this action, the parties currently dispute whose policy affords coverage for the accident forming the underlying suit. (Order, Dkt. [54] at 2.)

On July 6, 2015, the Court entered an order finding that the *Wilton/Brillhart* doctrine required this Court to abstain from resolving the remaining factual issues. (Id. at 13 (citing Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).)  Plaintiff Selective Insurance Company of America ("Selective") then moved for reconsideration, revision, and correction of that Order.  (Pl.'s Mot. for Recons., Dkt. [55].)  On March 29, 2016, the Court entered an order granting Plaintiff's motion in part, rescinding the stay of the Declaratory Action as to the issue of ownership of the Xterra at the time of the accident. (Order, Dkt. [60].)  Accordingly, that is the only question presently before the Court.

Upon request of the Court, the parties filed briefs. Plaintiff now asserts that Defendant Joyce Conner owned the Xterra at the time of the accident. (Pl. Br. in Supp. of Its Cont. that Conner Owned the Xterra at the Time of the Accident ("Pl. Br."), Dkt. [61].)  Defendants Conner and Precision Tapping, Inc. ("Precision Tapping"), and separately Defendant Allmerica Financial

Alliance Insurance Company ("Allmerica"), respond in opposition, arguing that at the time of the accident, Defendant Precision Tapping owned the Xterra. (Defs. Joyce Conner and Precision Tapping's Res. to Pl.'s Br. in Supp. of Its Cont. that Ms. Conner Owned the Xterra at the Time of the Accident ("Conner & PT's Resp."), Dkt. [62]); Resp. in Opp'n to Pl.'s Br. Regarding Ownership of the Xterra ("Allmerica's Resp."), Dkt. [63].)

A full recitation of the facts is set out in the Court's July 6, 2015 Order and does not need to be repeated here. (Order, Dkt. [54] at 2-4.) For the purposes of this Order the Court will set forth only the facts that relate to ownership of the Xterra. On September 26, 2011, the day of the accident, Conner went to the DMV.[1] Plaintiffs argue Conner had the intent to transfer title of the Xterra from Precision Tapping into her own name. (Pl.'s Statement of Add'l Material Facts That Present a Genuine Issue for Trial ("Pl.'s SOMF"), Dkt. [45-1] ¶ 4.) Conner informed the DMV of her wish to transfer the title, signed the certificate of title, and paid for the transfer. (Id. ¶ 5.) The accident

---

[1] The Court notes Plaintiff's explanation that Conner actually went to the Department of Revenue, Motor Vehicles Division to transfer title and registration. In an effort to promote consistency, as Plaintiff has done in its brief, the Court will continue to refer to this entity as the "DMV."

AO 72A
(Rev.8/82)

occurred shortly after Conner left the DMV.  (Id. ¶ 7.)  Six days later, Conner received a new title for the Xterra in the mail that was printed on September 29, 2011. (Conner & PT's Resp., Dkt. [62] at 4 (citing Conner Aff. ¶ 7)).

Conner and Precision Tapping—and, separately, Allmerica—now argue that Conner did not transfer ownership of the Xterra from Precision Tapping to herself on September 26, 2011 because Conner claims she did not intend for the transfer to "be complete until October 8, 2011."  (Id. (citing Conner Aff. ¶ 8).)  In response, Plaintiff argues that Conner's intent is irrelevant to the discussion of ownership because she became the legal owner of the car upon completing the documents at the DMV on September 26, 2011.  (Pl.'s Reply Br., Dkt. [64] at 3-6.)  The Court first sets forth the relevant legal standard before turning to the parties' arguments.

## Discussion

I.   **Legal Standard - Summary Judgment**

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  "The moving party bears 'the initial responsibility of informing the . . .

4

court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are

reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (holding that the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist.  Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

## II. Analysis

Plaintiff argues that the Court should find as a matter of law that Conner was the legal owner of the Xterra at the time of the accident on September 26,

6

2011, because that day she transferred title of the vehicle from Precision Tapping to her own name at the DMV. Defendants Precision Tapping and Conner argue that ownership is not governed entirely by title transfer, and that the Court should therefore consider Conner's intent.  Defendant Allmerica separately suggests that even if Conner signed the paperwork to transfer title on September 26, 2011, title was not legally transferred until she received the final certificate in the mail on September 29, 2011.  The Court, using the legal framework set forth above, now considers each party's arguments.

Plaintiff's argument turns on the application of O.C.G.A. § 40-3-32, which governs transfer of title for motor vehicles in Georgia.  Section 40-3-32 requires, in relevant part, the transferor to, "execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate of title . . . and cause the certificate and assignment to be delivered to the transferee." O.C.G.A. § 40-3-32(a).  Although Defendants Precision Tapping and Conner question the admissibility of Plaintiff's "Blank Certificate of Title," it is undisputed that Conner received a new certificate of title.[2]

---

[2] The Court notes that Plaintiff has not authenticated the blank copy of the Georgia Certificate of Title provided in Plaintiff's brief. (Pl.'s Br., Dkt. [61] at 4.) Nonetheless, the Court may take judicial notice of public records. Universal Express,

7

(Conner Depo., Dkt. [43] at 84:6-8.)   Further, Conner testified that she signed the back of the existing certificate of title on the day of the accident. (Id. at 82:6-12, 17-21.)   Therefore, the undisputed facts show that Conner complied with Section 40-3-32(a), and thereby successfully transferred title of the Xterra from Precision Tapping to herself on September 26, 2011.

Defendants Precision Tapping and Conner argue that Conner's intent was to apply to transfer title on September 26, 2011, but that ownership of the Xterra would not be transferred until October 8, 2011.  In support of their contention, Precision Tapping and Conner cite  O.C.G.A. § 40-3-32 (d). This section of the statute provides:

> Except as provided in Code Section 40-3-33 and as between the
> parties, a transfer by an owner is not effective until this Code
> section and Code Section 40-3-33 have been complied with; and no
> purchaser or transferee shall acquire any right, title, or interest in
> and to a vehicle purchased by him unless and until he shall obtain from the transferor th
> accordance with this Code section.

O.C.G.A. § 40–3–32 (d).  Defendants argue that this provision of the statute

---

Inc. v. S.E.C., 177 Fed. App'x 52,53 (11th Cir. 2006) (stating that "[p]ublic records are among the permissible facts" of which a court may take judicial notice).  Plaintiff correctly cites that the blank certificate was published by the Department of Revenue.  Therefore, the court may consider the blank certificate because the excerpt could be reduced to admissible evidence at trial.

allows for the transferring parties to circumvent the steps outlined earlier in the statute for title transfer and otherwise agree to transfer ownership according to their own intent. (Conner & PT's Resp., Dkt. [62] at 10.)

Defendants cite a line of Georgia cases finding that the sale of vehicles could be governed by O.C.G.A. § 11-2-401, Georgia's Commercial Code, instead of Section 40-3-32. (Id. ¶ C.) These cases turn on either physical possession of the vehicle or the intent of the parties. See, e.g., State Farm Mut. Auto. Ins. v. Sargent, 354 S.E.2d 833, 833 (Ga. Ct. App. 1982) (holding that "[i]n order to find whether or not a sale has taken place we must first determine whether there was a binding agreement between [the parties]."); American Mut. Fire Ins. Co. v. Cotton States Mut. Ins. Co., 253 S.E.2d 825, 827 (Ga. Ct. App. 1979) ("Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time and place . . . .").

Here, Defendants argue that "both Precision Tapping and Conner agreed that obtaining a new title and putting the Xterra on Conner's personal insurance

9

on or after October 8, 2011 were conditions precedent to the transfer of the Xterra from Precision Tapping to Conner." (Conner & PT's Resp., Dkt. [62] at 9 (citing Conner Aff. ¶¶ 4-5, 8).) As evidence of her intent, Conner submits an affidavit. The Court notes Plaintiff's argument that Conner's affidavit conflicts with her prior deposition. However, because Conner's intent does not affect the outcome of this decision, the Court need not address the issue at this time. Even accepting Conner's affidavit of intent as true, Conner's intent is not relevant in determining the ownership of the Xterra. Consequently, there is no genuine issue of material fact that prevents the Court from deciding this issue as a matter of law.

It is evident under both the case law and the plain text of Section 40-3-32(d) that the opportunity for the parties' intent to affect the ownership of a vehicle is *before* the title has been transferred. None of the relevant case law introduced by either party presents a situation where title was legally transferred but the parties later claim they did not intend to hand over ownership at that time. The carefully carved out exception to the general rule laid out in Section 40-3-32 is clearly intended to allow parties to legally transfer ownership of a vehicle before having the chance to fill out the necessary paperwork to finalize

the agreement.  That is not the situation before the Court here.  For example, in American Mutual Fire Insurance Co. v. Cotton States Mutual Insurance Co., 253 S.E.2d 825, 825 (Ga. Ct. App. 1979), the court found a successful change in ownership—even though the seller had not applied to transfer title—because the car had physically changed hands and as such the transfer of possession, indicated that the intent of the parties was to transfer ownership.[3]  In fact, in State Farm Mutual Automobile Insurance v. Sargent, 354 S.E.2d 833, 834 (Ga. Ct. App. 1982), the court noted the seller's plan to apply for title transfer after the buyer obtained a loan as evidence of her intent to maintain ownership of the car, further suggesting the finality of transferring title.  Accordingly, the Court holds that on the facts of this case, Conner's intent cannot override the legal transfer of title which occurred on September 26, 2011.

Alternatively, Defendant Allmerica argues that Conner merely applied for a transfer at the DMV on September 26, 2011, but did not obtain ownership of

---

[3] The Court notes that both Plaintiff and Defendants Precision Tapping and Conner make arguments regarding physical possession of the car.  Because the ownership of the car can otherwise be determined under Section 40-3-32, the Court will not address these arguments.

11

the vehicle until she received the printed new title in the mail, six days later.[4] (Allmerica's Resp., Dkt. [63] at 4-5.) Allmerica also relies on Section 40-3-32(d). Yet, O.C.G.A. § 40-3-32(b) clearly provides, in relevant part, that the transferee "shall execute the application for a new certificate of title . . . and cause the certificate of title to be mailed or delivered . . . " § 40-3-32(b). Conner completed both of these steps at the DMV on September 26, 2011. Section (b) further provides directions for how to proceed "if the documents ... are rejected," indicating that rejection is the exception not the rule. Id. As such, the receipt of the printed title is a formality, not a requisite for official ownership.

In fact, the DMV records confirm that Conner obtained ownership of the Xterra on September 26, 2011. The "General Vehicle Detail" document clearly indicates that the "purchase date" was September 26, 2011, as well as noting Conner's "temp[orary] active" status on that date. (Dkt. [43-14].) Furthermore, the final Certificate of Title received by Conner notes September 26, 2011 as the

---

[4] Allmerica also contends that Plaintiff waived its coverage defenses by paying for the damaged Xterra after the accident and continuing to accept premiums on the car. This argument is irrelevant because the only issue before the Court is the legal ownership of the Xterra. (Allmerica's Resp., Dkt. [63] at 5,6.)

"date [of] vehicle pur[chase]." (Pl.'s Br., Dkt [61] at Exhibit B.)

Given the plain text of Section 40-3-32 and the facts set forth in the record, the Court determines that Conner was the legal owner of the Xterra at the time of the accident on September 26, 2011.  At its core, this was a legal inquiry without clear precedent.  To this end, the Court relied heavily upon the clear language and previous interpretations of Section 40-3-32, as well as the uncontroverted written documentation, indicating that the ownership of the vehicle was successfully transferred when Conner completed the paperwork. There has been no showing of any genuine issue of material fact regarding this single issue.  As such, this single legal issue is decided as a matter of law.

## Conclusion

For the foregoing reasons, the Court concludes that Conner was the legal owner of the Xterra on September 26, 2011. The Clerk is **ORDERED** to **ADMINISTRATIVELY CLOSE** the case. Any party may move to reopen the case should further action by the Court be required.

**SO ORDERED**, this 1st day of August, 2016.

_____
**RICHARD W. STORY**
United States District Judge